Case 08-04004 Doc 14 Filed 10/14/08 Entered 10/14/08 15:35:48 Desc Main Document Page 1 of 9



10/14/2008

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **GARY JOSEPH DERER** | § | |
| | § | **CASE NO. 07-42352** |
| **Debtor** | § | **(Chapter 7)** |
| | § | |
| | § | |
| **LYNDIA COTTON and THOMAS MONTGOMERY,** | § | |
| | § | |
| Plaintiffs, | § | Adv. Proc. No. 08-4004 |
| | § | |
| v. | § | |
| | § | |
| **GARY JOSEPH DERER,** | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court following a hearing on the Motion for Default Judgment filed by the Plaintiffs, Lyndia Cotton and Thomas Montgomery, against the Debtor, Gary Joseph Derer. The Debtor failed to appear at the hearing on the Motion for Default Judgment. At the conclusion of the hearing, for the reasons set forth below, the Court granted the Motion for Default Judgment as to Plaintiff Montgomery's objections to the Debtor's discharge as well as Plaintiff Cotton's objections to the dischargeability of the Debtor's obligation to her.

## I. FINDINGS OF FACT

### *A. Lyndia Cotton's Claims*

1. The Debtor is an attorney. The Debtor's law firm, the Law Offices of Gary J. Derer, operated from 1987 through 2007. In early 2003, Plaintiff Cotton met with the Debtor to discuss and receive legal advice regarding asset protection.

FINDINGS OF FACT AND CONCLUSIONS OF LAW    PAGE -- 1

2. On February 3, 2003, Plaintiff Cotton delivered $200,000 to the Debtor via wire transfer. The Debtor was to use $10,000 for the purposes of creating and establishing a Nevada corporation for Plaintiff Cotton, and the balance was to be held in a trust account managed by the Debtor for the payment of future legal fees. The Debtor failed to set up a corporation for Plaintiff Cotton or to place her funds in a trust account – indeed, the Debtor failed to keep Plaintiff Cotton's funds in any account. In September 2003, Plaintiff Cotton demanded the return of her money.

3. The Debtor failed to return $65,000 of Plaintiff Cotton's funds. Plaintiff Cotton sued the Debtor for misappropriation of client trust monies by conversion, violation of the Texas Theft Liability Act, and breach of fiduciary duties in the 116th Judicial District Court of Dallas County. In addition, Plaintiff Montgomery sued the Debtor (as well as a number of Debtor-related entities) for breach of contract, defamation of character, breach of fiduciary duty and tortuous interference with a prospective contract in the 116th Judicial District Court of Dallas County (the "State Court Proceedings").

4. Prior to the Petition Date, the state court entered an interlocutory judgment in favor of Plaintiff Cotton and against the Debtor based upon pleadings of, *inter alia*, conversion and the Texas Theft Liability Act. The judgment is not binding upon this Court because it is not final. However, as discussed more fully below, the facts underlying Plaintiff Cotton's claims against the Debtor supports an action under 11 U.S.C. §523(a)(4) and (6).

### *B. Thomas Montgomery's Claims*

5. In or about January 2006, Plaintiff Montgomery engaged in a business venture with the Debtor and Kenneth Henning ("Henning"). HLM Assurance Group, L.L.C. ("HLM"), a Texas limited liability company, was formed in furtherance of this business venture.

6. HLM was set up to sell insurance products to clients of the Debtor's legal practice. The Debtor's legal practice included, but was not limited to, the formation of trusts, wills, and other legal documents associated with financial planning.

7. After forming HLM, Henning and the Debtor began funneling money due to HLM and/or Plaintiff Montgomery to numerous other entities that Henning and/or the Debtor had formed after forming HLM. These entities include, but are not limited to, Lemax, L.L.C. ("Lexmax"); Lexpro, L.L.C.; Foundation for Legal Peace of Mind, L.L.C.; Holy Kingdom Management, L.L.C.; and Holy Kingdom Assurance, L.L.C.

8. Despite the fact that Plaintiff Montgomery was a member of HLM, the Debtor and Henning began to limit Plaintiff Montgomery's access to financial information related to HLM as well as information related to the disbursement of commissions related to the sale of insurance products through HLM. Plaintiff Montgomery requested that Henning and/or the Debtor allow him to review HLM's business commission records and bank statements, but Henning and/or Debtor refused to allow Plaintiff Montgomery to review the requested information. The Debtor and Henning demanded that Plaintiff Montgomery return his key to HLM's office because Henning and the Debtor stated that he was being "too nosey" about HLM's business.

9. The Debtor, as legal counsel for Plaintiff Montgomery, advised Plaintiff Montgomery to enter into contracts which the Debtor knew would result in a fraud being perpetrated on Plaintiff Montgomery by Debtor, Henning and HLM, including, but not limited to, releasing his interest to all insurance commissions earned and due Plaintiff Montgomery.

10. The Debtor fraudulently transferred commission monies which Plaintiff Montgomery had earned from premium finance policies through HLM and Lexmax to Jordan

Massad ("Massad"). The amount of this transfer was $165,000 as shown by the trial transcript of the State Court Proceedings. Plaintiff Montgomery testified that the total amounts due him was no less than $500,000, but that it could be more because he was denied access to the financial records of the Debtor and the entities subject to his control.

11. On October 5, 2007 the District Judge for the 116th Judicial District Court of Dallas County appointed a receiver over all of Debtor's non-exempt assets (the "Receivership Order").

12. On October 11, 2007, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). The Court subsequently appointed Mr. Christopher Moser as the Chapter 7 trustee for the Debtor's bankruptcy estate (the "Trustee"). According to the Debtor's testimony at meeting of creditors held pursuant to 11 U.S.C. §341, the entry of the Receivership Order prompted the filing of his bankruptcy petition.

13. The Debtor filed his bankruptcy schedules on November 2, 2007. The Debtor did not list an interest in HLM, Lexmax, or any other business in his Schedule B – Personal Property. In response to Question No. 18 in his Statement of Financial Affairs, which instructed the Debtor to disclose "all businesses in which the debtor was an officer, director, partner or managing executive" or "in which the debtor owned 5 percent or more of the voting or equity securities" within the six years prior to bankruptcy, the Debtor responded "Law offices of Gary J. Derer." The Debtor listed Plaintiff Montgomery as an unsecured creditor holding a contingent, unliquidated and disputed claim, and he listed Plaintiff Cotton as an unsecured creditor holding a non-contingent, liquidated and undisputed claim in the amount of $65,000.00. In his Schedule I – Current Income of Individual Debtor(s), the Debtor stated that he had been employed for the past month as the executive director for the Foundation for Legal Peace of Mind with a gross monthly salary of $6,250.

14. The Plaintiffs initiated this adversary proceeding on January 4, 2008, by filing an adversary complaint against the Debtor. The Debtor, who was properly served with the adversary complaint pursuant to the Federal Rules of Bankruptcy Procedure, failed to respond. Accordingly, on July 17, 2008, the Court entered a default against the Debtor pursuant to Federal Rule of Bankruptcy Procedure 7055(a). The Plaintiffs filed their Motion for Default Judgment on July 28, 2008, and the Court set the Motion for Default Judgment for hearing on August 26, 2008. The Debtor was served with notice of the hearing but failed to appear. It appears from the record that the Debtor is not an infant or an incompetent person.

## II. CONCLUSIONS OF LAW

15. A proceeding to determine the dischargeability of a particular debt or involving objections to a debtor's discharge raises a core matter over which this Court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(I) and (J) and 1334.

### *A. 11 U.S.C. §727(a)(2)*

16. In general, §727 of the Bankruptcy Code provides that the Court must grant a discharge to a Chapter 7 debtor unless one or more of the specific grounds for denial of a discharge listed in paragraphs (1) through (10) of § 727(a) is proven to exist. The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. *See, e.g., Friendly Finance Discount Corp. v. Jones (In re Jones)*, 490 U.S. 452 (5th Cir. 1974). Further, under Federal Rule of Bankruptcy Procedure 4005, the burden of proof is on the party objecting to discharge.

17. Section 727(a)(2) is intended to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets. This provision states in pertinent part as follows:

>   [t]he court shall grant the debtor a discharge, unless . . . the debtor, with intent to hinder, delay or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed (A) property of the debtor within one year before the date of the filing of the petition; or (B) property of the estate, after the filing of the petition.

11 U.S.C. §727(a)(2). Thus, to establish that the Debtor's discharge should be denied under §727(a)(2)(A), the Plaintiffs must prove by a preponderance of the evidence: (i) the existence of a transfer of property, (ii) belonging to the debtor, (iii) within one year of the filing of the petition, (iv) with intent to hinder, delay, or defraud a creditor of the estate. *See Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989).

18.    Here, by omitting any reference to the entities in which he has an interest in the Statement of Financial Affairs and Schedule B, the Debtor effectively concealed his interest in these entities and their operations from the Trustee and the Debtor's creditors. The Debtor concealed his interest in these entities with the intent to hinder, delay, or defraud a creditor or an officer of the estate. Accordingly, the Court concludes that Plaintiff Montgomery has established the elements of 1 U.S.C. §727(a)(2)(B).

### *B. 11 U.S.C. §523(a)(2) and (a)(4)*

19.    Having found that the Debtor's discharge in bankruptcy should be denied pursuant to §727(a)(2)(B), it is not necessary for the Court to discuss Plaintiff Cotton's objections to the discharge of the Debtor's obligation to her. Plaintiff Cotton nevertheless requests a judgment of nondischargeability. The Court will address Plaintiff Cotton's discharability objection in order to provide the parties with a full discussion of the issues presented in the Motion for Default Judgment.

20.    In an action to determine the dischargeability of a debt, the creditor has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S.

279, 286 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). Thus, without satisfactory proof of each element of the causes of action asserted by the Plaintiff, judgment must be entered for the Defendant.

21. Section 523(a)(2)(A) of the Bankruptcy Code provides that:

> [A] discharge under §727 . . . of this title does not discharge an individual debtor from any debt for money, property, or services, . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. §523(a)(2)(A). For a debt to be non-dischargeable under this section, the creditor must show that (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result of his reliance. *General Elec. Capital Corp. v. Acosta (In re Acosta),* 406 F.3d 367, 371 (5th Cir. 2005). An intent to deceive may be inferred from a reckless disregard for the truth or the falsity of a statement combined with the sheer magnitude of the resulting misrepresentation. *Id.* Furthermore, silence as to material facts can constitute a false representation. *Id.*

22. Section 523(a)(4) provides that: "[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4). With respect to fraud or defalcation, the creditor must first establish that the debtor owed a fiduciary duty to the creditor.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** **PAGE -- 7**

Significantly, the concept of fiduciary under §523(a)(4) is a much narrower one than under general common law. With regard to an attorney's duties to his client, the law requires "more than an attorney-client relationship alone to establish a fiduciary relationship for purposes of § 523(a)(4)." *In re Young,* 91 F.3d 1367, 1371 (10th Cir.1996). For a fiduciary relationship to exist under §523(a)(4), there must be an express or technical trust. *See, e.g., Miller v. J.D. Abrams, Inc.* (*Matter of Miller)*, 156 F.3d 598, 602 (5th Cir.1998); *Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 - 43 (5th Cir. 1998).

23.     Here, Plaintiff Cotton knew the Debtor was an attorney and, relying upon that fact, wired the sum of $200,000 to him with the justified belief that it would be kept safe. This Court concludes that a binding and legally sufficient fiduciary relationship existed between Plaintiff Cotton and the Debtor. The Debtor's failure to maintain the funds in his attorney trust account was defalcation while acting in a fiduciary capacity. Accordingly, the Court concludes that Plaintiff Cotton has established that the Debtor's obligation to her is nondischargeable pursuant to 11 U.S.C. §523(a)(4).

24.     The Debtor represented to Plaintiff Cotton that he would set up a corporation for her for $10,000 and that the balance of the $200,000 she wired to him would be held in trust. This representation was false, and the Debtor made the representation with the intent to deceive Plaintiff Cotton. Plaintiff Cotton justifiably relied on the representations of the Debtor, who was acting as her attorney, and she sustained a loss of at least $65,000 as a result of her reliance of the Debtor's representations. Accordingly, the Court concludes that Plaintiff Cotton has established that the Debtor's obligation to her is nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A).

## III.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff Montgomery has established his objection to the Debtor's discharge pursuant to 11 U.S.C. §727(a)(2) and that the Debtor's obligation to Plaintiff Cotton is nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and (4). The Court will enter a separate judgment consistent with these findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9021, which adopts and applies Federal Rule of Civil Procedure 7058 to adversary proceedings.

To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings as necessary or as requested by any party.

Signed on 10/14/2008

*Brenda T. Rhoades*   MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE